LARRY STEWART,                        )
                                      )
        Plaintiff/Appellant,          )        Appeal No.
                                      )        01-A-01-9810-BC-00557
v.                                    )
                                      )        Tennessee Claims Commission
STATE OF TENNESSEE,                   )        No. 109172
                                      )
        Defendant/Appellee.           )

FILED

September 21, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE TENNESSEE CLAIMS COMMISSION

AT NASHVILLE, TENNESSEE


THE HONORABLE W. R. BAKER, COMMISSIONER



RANDY HILLHOUSE
Hillhouse & Huddleston
212 Pulaski Street
P. O. Box 787
Lawrenceburg, Tennessee 38464
        ATTORNEY FOR PLAINTIFF/APPELLANT



PAUL G. SUMMERS
Attorney General and Reporter

MARY G. MOODY
LAURA T. KIDWELL
425 Fifth Avenue North
Second Floor, Cordell Hull Building
Nashville, Tennessee  37243-0488
        ATTORNEYS FOR DEFENDANT/APPELLEE



AFFIRMED AND REMANDED



                                      WILLIAM B. CAIN, JUDGE

# O P I N I O N

This is an automobile accident case that was tried before the Tennessee Claims Commission as regards the liability of the State for the actions of a Tennessee highway patrolman alleged to have been negligent.

Late in the evening of September 20, 1991, Tennessee highway patrolman Billy Ray was patrolling in Lewis County, Tennessee when he overheard a county radio alert relative to someone speeding on Buffalo Road (Tennessee Highway 99). In follow-up to this radio message, Trooper Ray pulled in behind a 1974 Nova automobile and activated his blue lights; the Nova pulled onto the right shoulder of the highway and stopped with Trooper Ray stopping immediately behind the Nova with blue lights still activated. The 1974 Nova belonged to one Robert Spencer and was being driven at the time by Ronnie Schaffer who was driving on a revoked license. In the passenger seat of the Nova was one Angela Pollock.

Two patrol cars from the Lewis County Sheriff's Department arrived shortly thereafter and pulled in with blue lights and headlights activated behind the patrol car of Trooper Ray. The first of these was the patrol car of Deputy William Adkins who was accompanied by Reserve Deputy Bruce Bowen. The second sheriff's patrol car was driven by Deputy W. C. Hamm accompanied by Reserve Deputies Blain Roden and Larry Stewart. Trooper Ray arrested Ronnie Schaffer for driving on a revoked license and placed him in the Tennessee Highway Patrol car. Mr. Schaffer requested that Ms. Pollock be allowed to take the 1974 Nova back to the owner Mr. Spencer. As Mr. Schaffer was not in any way impaired, Trooper Ray, pursuant to state policy guidelines, granted his request but problems with the 1974 Nova were soon apparent. It was parked on an incline and suddenly started to roll backward toward Mr. Ray's patrol car. Reserve Deputy Bowen climbed in the Nova and stepped on the brake successfully stopping the vehicle. Ms. Pollock wanted to turn the car around to head in the opposite direction but during the turn the Nova stalled and would not start. The deputies and reserve deputies then pushed the car to the opposite side of the road turning it to the left and pushed it on to the shoulder opposite to the

2

patrol cars. The deputies pushed the car to a level spot in the road where it stopped. Efforts to start the Nova failed and Ronnie Schaffer indicated to Trooper Ray that there was a "trick" to starting the car and asked to be allowed to go across the highway and start the car. Trooper Ray acceded to this request, but Schaffer was unable to start the Nova. The scene was set thus. On the west side of the highway were three patrol cars with blue lights and headlights in activated position, all facing south, and on the east side of the highway facing north was a stalled 1974 Nova. Mr. Stewart and some of the other deputies were still on the east side of the road attending the stalled Nova. At this point Mr. Mann Nutt, driving a truck in a northerly direction on Highway 99, came upon this scene and focused his attention to his left on the blue lights of the three patrol cars. His truck struck Reserve Deputy Larry Stewart and knocked him some ninety feet from the point of impact. The truck then struck the parked Nova. The injuries to Mr. Stewart were severe, permanent and totally disabling. Mr. Stewart and his wife, Kathy Stewart, brought suit before the Claims Commission, asserting negligence of Trooper Ray and seeking recovery under Tennessee Code Annotated section 9-8-307. The case was heard on its merits and the Claims Commissioner assessed seventy percent of fault to Mr. Nutt, twelve percent fault to Larry Stewart, ten percent fault to Trooper Ray, and eight percent fault to the other deputies of the Lewis County Sheriff's Department. The Commissioner further held that since he found Mr. Stewart to be more at fault than Trooper Ray, he could allow no recovery to Mr. Stewart against the State of Tennessee. It is conceded that this is error and that under comparative fault Mr. and Mrs. Stewart would be allowed to recover ten percent of their damages from the state under the allocation of fault made by the Claims Commissioner.

On appeal, the terms "appellant and appellee" are somewhat misleading as Larry and Kathy Stewart appeal solely on the failure of the Claims Commissioner to allow their ten percent recovery against the state, with everybody agreeing that on this issue Mr. and Mrs. Stewart are correct. The real appeal therefore is by the appellee questioning subject matter jurisdiction, a preponderance of the evidence, and asserting governmental discretionary function immunity, and alleging further that Larry Stewart was more than fifty percent at fault.

The first two issues stated by the appellee for review are:

1. Is a claim based upon a trooper's alleged failure to adequately supervise sheriff's deputies within the jurisdiction of the Claims Commission Act?

2. Does the evidence presented at trial preponderate against the Commissioner's finding that Trooper Ray was negligent in failing "to take sharper, firmer control" of sheriff's deputies who were present at an arrest scene, but not assisting the trooper.

The Claims Commissioner does not identify the particular category of Tennessee Code Annotated section 9-8-307(a)(1) under which he made his determination of ten percent fault as to Trooper Ray. Inherent in his findings, however, are categories (E) and (F).

Tennessee Code Annotated section 9-8-307(a)(1) provides in part:

The Commission or each Commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as such term is defined in section 8-42-101(3), falling within (1) or more of the following categories:
. . .
(E) Negligent care, custody and control of persons;
(F) Negligent care, custody or control of personal property;

We must first consider the state's assertion that the alleged failure of Trooper Ray to "adequately supervise" sheriff's deputies is not within the jurisdiction of the Claims Commission Act.

First of all, the plaintiff contends that Tennessee Code Annotated section 9-8-307(2)(3), specifically mandates a liberal construction of the subject matter jurisdiction of the Claims Commission providing in part: It is the intent of the General Assembly that the jurisdiction of the Claims Commission be liberally construed to implement the remedial purposes of this legislation ..."

The above provision of the statute was not a part of Chapter 972 of the Public Acts of 1984, which first established the Claims Commission but was added thereto by section one of Chapter 105 of the Public Acts of 1985.

The supreme court has held:

> Article 1, section 17, of the Constitution, delegating to the Legislature the power to authorize suits against the state, being in derogation of the state's inherent exemption from suit, must itself be strictly construed; hence legislation authorizing suits against the state must strictly pursue the constitutional requirements, and be so plain, clear, and unmistakable in its provisions as to the manner and form in which such suits may be brought as to leave nothing to surmise or conjecture.

*State, ex rel. Allen v. Cook*, 171 Tenn. 605, 611, 106 S.W.2d 858, 860-61 (1937).

In spite of the existence of this "liberal construction" provision in the statute since 1985, the appellate courts have continued to adhere to the constitutionally mandated strict construction rule. *Pool v. State,* 987 S.W.2d 566 (Tenn. Ct. App. 1998); *Morris v. State,* 1999 WL 98965 (Tenn. Mar. 1, 1999)*; Daley v. State,* 869 S.W.2d 338 (Tenn. Ct. App. 1993).[1]

Applying the strict construction rule to Tennessee Code Annotated section 9-8-307, still leaves for decision the question of whether or not the acts or omissions of Trooper Ray constituted "... negligent care, custody and control ..." of persons or personal property within the meaning of categories (E) and (F).

In this respect, the evidence does not preponderate against the finding of the Commissioner that Trooper Ray was negligent and that such negligence was a proximate cause of the injuries to the plaintiffs. The proof is undisputed that Trooper Ray was the first law enforcement officer on the scene and that he "took charge" of persons and personal property by placing the driver of the 1974 Nova under arrest and then releasing the car to Angela Pollock. While refusal to call for a wrecker to tow away the Nova and the decision to turn the Nova over to Angela Pollock because requested to do so by the driver Ronnie Schaffer was

---

[1]Since we find jurisdiction lies under section 9-8-307 when that statute is strictly construed, we find it unnecessary to delve into the constitutional morass of liberal versus strict construction, except to note the questionable constitutionality of an attempt by legislative fiat to enlarge a power which is already limited at its source, *i.e.,* the Constitution of Tennessee, Article I, section 17. The opinion by Judge Koch in *Hembree v. State,* alluded to this tension. *Hembree v. State*, 1995 WL 50066 at * 3 (Tenn. Ct. App. 1995), *perm app. granted, Hembree v. State,* 925 S.W.2d 513 (Tenn. 1996).

in accordance with state mandated policy, such is not determinative of state liability. Trooper Ray knew that the Nova was defective when it suddenly started to roll backward toward his patrol car, prior to the intervention of Deputy Bowen. He knew that the car stalled in the road when Ms. Pollock tried to move it. More importantly, he knew that personnel of the Lewis County Sheriff's Department had moved the disabled Nova to the eastern side of the road pointing north at a time when traffic moving north on the highway would confront a scene to the left of the driver where headlights and flashing lights were activated. The evidence thus supports the Commissioner's finding that Trooper Ray was negligent in failing "... to take sharper, firmer control ..." of sheriff's deputies at the scene and further supports a finding of negligent care, control and custody of the 1974 Nova of which he had taken control when he quite correctly arrested its driver, Ronnie Schaffer.

It does not matter in the context of this case that the fault of Trooper Ray is minor by comparison to the fault of others as found by the Claims Commissioner. Plaintiff Larry Stewart was found by the Commissioner to be more at fault than was Trooper Ray but the findings of the Commissioner specifically did not assign "more than fifty percent" of the total fault to Mr. Stewart. The findings of the Commissioner thus rendered the state liable for ten percent of the damages of Mr. and Mrs. Stewart. *See generally McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992).

Thus, the first two issues presented by the state are found to be without merit.

Issue number three asserted by the state is: "III. Are a state trooper's actions in controlling an arrest scene discretionary functions for which the state is immune from liability?"

Under the facts of this case the actions of Trooper Ray are clearly "operational acts" to which "discretionary function immunity" does not attach.

The Supreme Court of Tennessee has held:

6

On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation. *Aslakson v. United States*, 790 F.2d 688, 692 (8th Cir. 1986).

*Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992).

Trooper Ray had no part in decisions determining regulation, policy and standard. Carrying out such preexisting regulations, policies and standards was an operational act for which governmental immunity does not exist for negligence constituting proximate cause.

The final issue presented by the state faults the Commissioner for failing to find that the evidence established that Larry Stewart was more than fifty percent at fault. The evidence establishes that there was plenty of fault to be shared by everyone involved in this tragedy and the evidence does not preponderate against the fault allocation found by the Commissioner. Tenn. R. App. P. 13(d).

The judgment of the Claims Commission is affirmed in all respects except as to the right of recovery by Larry and Kathy Stewart from the State of Tennessee. That recovery for Mr. Stewart is ten percent of the $300,000.00 limit of liability mandated by Tennessee Code Annotated section 9-8-307(e). The recovery for Mrs. Stewart is ten percent of the $40,000.00 found by the Commissioner, the amount of such damages not being challenged on appeal. The case is remanded to the Claims Commission for collection of the judgments.

Costs of the appeal are assessed against the State of Tennessee.

_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
JOE C. LOSER, SPECIAL JUDGE