# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 27, 2002 Session

## JANET BOLTON, ET AL. V. STATE OF TENNESSEE

**Appeal from the Claims Commission**
**No. T96000358    Michael S. Lacy, Commissioner**

**FILED AUGUST 6, 2002**

**No. E2001-02960-COA-R9-CV**

Janet Bolton and Jack Bolton ("Plaintiffs") sued the State of Tennessee ("State"), alleging the State was liable for injuries Janet Bolton received in a motor vehicle accident which occurred on a State highway in Loudon County. The State filed a Motion for Summary Judgment, arguing it was entitled to judgment as a matter of law under the defense of discretionary function immunity. The Tennessee Claims Commission denied the motion. The State appeals. We affirm, in part, and reverse, in part, and remand.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission;**
**Judgment of the Claims Commission Affirmed, in part,**
**and Reversed, in part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Paul G. Summers, Michael E. Moore and Laura T. Kidwell, Nashville, Tennessee, for the Appellant, State of Tennessee.

Joe E. Guess and Samuel A. Guess, Knoxville, Tennessee, for the Appellees, Janet Bolton and Jack Bolton.

## OPINION

## Background

In September 1995, Janet Bolton was involved in a motor vehicle accident when she pulled her vehicle onto U.S. Highway 11, also known as State Route 2 ("Highway 11"), from a stop sign at Shaw Ferry Road in Loudon County. After entering Highway 11, Bolton's vehicle was hit from the rear by another vehicle. Bolton sustained serious physical injuries in the accident and her husband, Jack Bolton, claimed loss of consortium. The record shows that the section of Highway 11 that includes the intersection was constructed in 1924.

Janet Bolton and her husband, Jack Bolton, filed a Complaint in May 1996, with the State Claims Commission and named the State of Tennessee as defendant. In the Complaint, Plaintiffs contended the Shaw Ferry/Highway 11 intersection ("intersection") was dangerous and that the State had notice of the intersection's defective condition. Plaintiffs claimed the State was liable for its failure to install safety devices at the intersection and to otherwise correct the dangerous intersection. Plaintiffs alleged in the Complaint that the State was liable for violation of Tenn. Code Ann. § 9-8-307(a)(1)(I) "by negligently planning, inspecting, designing, and maintaining of [sic] its highways . . ." and Tenn. Code Ann. § 9-8-307(a)(1)(J) by "causing dangerous conditions to exist on state maintained highways."[1]

The State, in addition to filing an Answer, filed a Motion for Summary Judgment. The State argued, in its motion, that it was entitled to judgment as a matter of law because it was immune from suit on Plaintiffs' claims. The State argued its decisions regarding whether to install a traffic control device at the intersection and whether to reconfigure or reconstruct the intersection were discretionary decisions. In support of its motion, the State filed the deposition testimony of Paul Beebe, who in 1994 was a traffic engineer for the Tennessee Department of Transportation ("TDOT"). The record shows Beebe testified that in 1994, at the request of Loudon County officials, he conducted a study of the intersection and found the intersection had limited sight distance. Beebe found the sight distance was limited to 50 mph. Thereafter, in 1994, pursuant to Beebe's findings, TDOT cut back trees and brush at the intersection and installed crossroad signs, a 40 miles per hour advisory speed plate, and stop bars for Shaw Ferry Road. Beebe also recommended to TDOT and Loudon County that a flashing beacon at the intersection was warranted. Beebe testified it is the responsibility of the individual county to install traffic lights. Beebe testified he sent a memorandum in September 1994 to the TDOT regional director regarding his recommendations. Beebe did not know how the regional director determined how to allocate the funds available for road work. The record shows Beebe also testified he was aware federal funds were available to correct and install traffic control devices on state highways.

---

[1] Plaintiffs also alleged in the Complaint that the State was liable for violation of Tenn. Code Ann. § 9-8-307(a)(1)(C), but this claim is not an issue on appeal.

Plaintiffs filed a response ("Response") to the Motion for Summary Judgment. In their Response, Plaintiffs agreed the State was entitled to immunity on the issue of Defendants' failure to install a traffic device since this decision was a discretionary function. Plaintiffs argued, however, the State was not immune from their other claims under Tenn. Code Ann. §§ 9-8-307(a)(1)(I) & (J) and that there were genuine issues of material fact which precluded a grant of summary judgment as a matter of law to the State.

The State, in reply to Plaintiffs' Response, filed an affidavit of Beebe in which Beebe stated the section of Highway 11 that includes the intersection was constructed in 1924 and had not been redesigned or reconstructed since then. Beebe further stated, in his affidavit, that TDOT had re-paved and maintained this section of Highway 11. Beebe's affidavit also provided that "[a]s for sight distance standards or guidelines in effect at the time of the construction of this section of [Highway 11], I am not aware of any such standards or guidelines."

The Claims Commission entered an Order in May 2001, denying the State's Motion for Summary Judgment. The Order did not provide the basis for the Claims Commission's decision other than stating that "genuine issues of material fact exist which will require a trial of this matter."

Thereafter, the State filed a motion to alter or amend judgment or, in the alternative, motion for permission to file an interlocutory appeal. The Claims Commission denied the State's motion to alter or amend judgment but granted its motion for permission to file an interlocutory appeal. This Court then allowed the State's interlocutory appeal pursuant to Tenn. R. App. P. 9.[2]

### Discussion

On appeal and although not exactly stated as such, the State raises the following issue: whether the Claims Commission erred in denying the State's Motion for Summary Judgment because the State is immune from Plaintiffs' claims under the common law defense of discretionary function immunity. The State, in its reply brief, however, concedes it is not entitled to summary judgment on Plaintiffs' claim that the portion of Highway 11 that includes the intersection was negligently designed or constructed but instead argues Plaintiffs did not raise this claim at the trial level.

Plaintiffs contend the Claims Commission correctly denied the State's Motion for Summary Judgment and argue the State is not entitled to discretionary function immunity for the negligent design and construction and the dangerous condition of the intersection under Tenn. Code Ann. §§ 9-8-307(a)(1)(I) and (J). Plaintiffs, however, concede the State is entitled to judgment as

---

[2] In addition to Tenn. R. App. P. 9, the State's appeal from the Claims Commission to this Court is made pursuant to Tenn. Code Ann. § 9-8-403(a)(1).

a matter of law under the discretionary function immunity defense for its decision whether or not to install a traffic control device at the intersection.

Our Supreme Court outlined the standard of review of a motion for summary judgment in *Staples v. CBL & Assoc.*, 15 S.W.3d 83 (Tenn. 2000):

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*,

952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

*Staples*, 15 S.W.3d at 88-89.

"'[T]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued.'" *Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) (quoting *Brewington v. Brewington*, 387 S.W.2d 777, 779 (Tenn. 1965)). Our State Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. Our State Legislature created the Tennessee Claims Commission to hear and adjudicate monetary claims against the State, and the jurisdiction of the Claims Commission is outlined in Tenn. Code Ann. § 9-8-307(a). If Tenn. Code Ann. § 9-8-307(a) does not contain a particular monetary claim, the State is immune from suit for that monetary claim, and the claimant may not seek relief from the State for that claim. *Stewart v. State*, 33 S.W.3d at 790. In addition, Tenn. Code Ann. § 9-8-307(c) provides that "[t]he determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care."

The statute upon which Plaintiffs rely, Tenn. Code Ann. §§ 9-8-307(a)(1)(I) & (J), provides, in pertinent part, as follows:

(a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories: . . .

(I) Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by [TDOT] as being on the state system of highways or the state system of interstate highways.

(J) Dangerous conditions on state maintained highways. The claimant under this subsection must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures.

Furthermore, under Tenn. Code Ann. § 9-8-307(d), "'the State may assert the common law immunity which has developed in this State with regard to discretionary actions of State employees.'" *Waters v. State*, No. 03A01-9808-BC-00243, 1998 Tenn. App. LEXIS 844, at * 2-3 (Tenn. Ct. App. Dec. 17, 1998), *no appl. perm. app. filed*, (quoting *Cox v. State*, 844 S.W.2d 173, 176 (Tenn. Ct. App. 1992)). The State is immune from suit for discretionary acts under this defense. Courts, when determining whether a particular decision of the State is discretionary, are to apply the planning-operational test. *Id.*, at * 3; *Cox v. State*, 844 S.W.2d at 176. When using the planning-operational test, courts are to consider "'(1) the decision-making process and (2) the propriety of judicial review of the resulting decision.'" *Waters v. State*, 1998 Tenn. App. LEXIS 844, at * 3 (quoting *Bowers v. Chattanooga,* 826 S.W.2d 427, 431 (Tenn. 1992)). A planning, or discretionary, decision has been described as follows:

> "If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. . . ." Such decisions "often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. . . ." Additionally, it must be taken into consideration whether the decision is the type properly reviewable by a court. "The discretionary function exception 'recognizes that courts are ill-equipped to investigate and balance the numerous facts that go into an executive or legislative decision' and therefore allows the government to operate without undue interference from the courts. . . ."

*Id.*, at * 3-4 (citations omitted) (quoting *Bowers v. City of Chattanooga*, 826 S.W.2d at 430).[3]

Plaintiffs contend the defense of discretionary function immunity is not available to the State for claims under Tenn. Code Ann. §§ 9-8-307(a)(1)(I) & (J). The plain language of the statute, itself, however, does not provide that this defense does not apply to claims made under Tenn. Code Ann. §§ 9-8-307(a)(1)(I) & (J) or that the State is prohibited from asserting this defense to these claims. Instead, the statute, after outlining the claims for which the Claims Commission has jurisdiction in Tenn. Code Ann. § 9-8-307(a)(1), provides the State "may assert any and all defenses, including common law defenses . . ." and "absolute common law immunities," except for good faith common law immunity, which would be available to individual state employees or officers for the same occurrence. Tenn. Code Ann. § 9-8-307(d). Moreover, this Court, in *Waters v. State*, applied the discretionary function immunity defense to claims brought under Tenn. Code Ann. §§ 9-8-

---

[3] This Court in *Waters v. State* held that, while our Supreme Court in *Bowers v. City of Chattanooga* applied the planning-operational test to an action against a municipality under the Tennessee Governmental Tort Liability Act, the test was also applicable to actions against the State where the State raises the defense of common law immunity. *Waters v. State*, 1998 Tenn. App. LEXIS 844, at * 3.

307(a)(1)(I) & (J) and affirmed the dismissal of the action because it found the State was entitled to the defense. *Id.*, at * 2-8.

We now address the State's argument on appeal that the Claims Commission erred in failing to grant it summary judgment as a matter of law on Plaintiffs' claim that the State is liable for its failure to install a traffic control device or make any correction to the intersection. Although not specifically stated as such in the Complaint, this claim correlates to Plaintiffs' claim that the intersection constituted a "dangerous condition" under Tenn. Code Ann. § 9-8-307(a)(1)(J). The statute does not provide a definition of "dangerous condition." Our Supreme Court, however, when interpreting this statutory section, held that whether the condition of a highway constitutes a "dangerous condition" is a question of fact, holding, in pertinent part, as follows:

> "The decision of whether a condition of a highway actually is a dangerous and hazardous one to an ordinary prudent driver is a factual one, and the court should consider the physical aspects of the roadway, the frequency of accidents at that place in the highway and the testimony of expert witnesses in arriving at this factual determination. . . ."

*Sweeney v. State*, 768 S.W.2d 253, 255 (Tenn.1989) (quoting *Holmes v. Christopher*, 534 So.2d 1022, 1026 (La. App. 4th Cir. 1983)).

Plaintiffs conceded, both at the Claims Commission and on appeal, that the State is entitled to discretionary function immunity for its decision whether or not to install a traffic control device. Accordingly, this was not an issue in dispute before the Claims Commission, and is not an issue in dispute on appeal. Therefore, we hold the Claims Commission should have granted the State's Motion for Summary Judgment on Plaintiffs' claim relating to the State's decision of whether or not to install a traffic control device, and we reverse this portion of the Order.

The second portion of Plaintiffs' claim that the intersection constitutes a dangerous condition is based upon their argument that the State failed to otherwise correct the intersection's dangerous defects. The State contends it is entitled to discretionary function immunity on this claim as well. While discretionary function immunity applies to claims such as the one made under Tenn. Code Ann. § 9-8-307(a)(1)(J), and even though the State's decision regarding the correction of the intersection's defects may well be a discretionary, or planning, decision, the record before us shows the State did not satisfy its summary judgment burden of establishing this affirmative defense. *See Staples v. CBL & Assoc.*, 15 S.W.3d at 88. The record shows the State, in attempting to establish that it was entitled to the discretionary function defense, relied only upon the deposition testimony and affidavit of TDOT Traffic Engineer Paul Beebe. Beebe's testimony and affidavit fall short of establishing that the State's decision not to correct the intersection's problems was a discretionary, or planning, function. *See Waters v. State*, 1998 Tenn. App. LEXIS 844, at * 5-7 (holding the Claims Commission correctly found the State's decision not to install guardrails on a road was discretionary as the proof showed that TDOT could not yet improve the road due to, in part, economic limitations). At best, Beebe testified only that he saw problems with the intersection,

-7-

made recommendations regarding how to correct the intersection, and knew about sources for funding for corrective measures made to state highways. The record before this Court does not contain undisputed material facts specific to assessing priorities, allocating resources, developing policies, or establishing plans, specifications or schedules relevant to correcting any dangerous condition of the intersection. Accordingly, the proof contained in the record is not sufficient to justify granting summary judgment to the State on this claim because of discretionary function immunity.

While this may well have been a discretionary, or planning, decision, by the State, we cannot hold from the record before us that the State has, as a matter of law, met its burden to justify summary judgment being granted based on this affirmative defense. Because the State failed to establish this affirmative defense, we hold the Claims Commission correctly denied the State's Motion for Summary Judgment on Plaintiffs' claim that the State failed to correct, by other than a traffic control device, the alleged dangerous condition of the intersection. We hold the defense of discretionary function immunity is available to the State as to Plaintiffs' claim the State failed to correct the dangerous condition of the intersection. However, based upon the record before us, the State has failed to present undisputed material facts sufficient to show, as a matter of law, that this was a discretionary, or planning, function.

Next, we address the State's argument on appeal that the Claims Commission erred in failing to grant it summary judgment on Plaintiffs' claim that the State is liable for the negligent planning and construction of the intersection in 1924. On appeal, the State agrees with Plaintiffs that a genuine issue of material fact exists regarding whether the intersection was negligently designed at the time of the construction of this section of Highway 11 in 1924, but contends Plaintiffs did not raise this claim at the trial level. The State argues it is "too late" for Plaintiffs to make this allegation, essentially arguing Plaintiffs waived this issue. *See Dep't of Human Serv. v. DeFriece,* 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996) (holding that "[i]t is well-settled that issues not raised at trial may not be raised for the first time on appeal"). The record on appeal, however, shows Plaintiffs alleged in the Complaint that the State is liable under Tenn. Code Ann. § 9-8-307(a)(1)(I) for "negligently *planning*, inspecting, *designing*, and maintaining of [sic] its highways. . . ." (emphasis added). The record also shows Plaintiffs argued, in their Response to the Motion for Summary Judgment, that "[w]hether the State was negligent in the *design or construction* of a public . . . highway pursuant to § 9-8-307(a)(1)(I) is a factual inquiry following the general principles of the law of negligence." (emphasis added). Accordingly, we find Plaintiffs raised this allegation at the trial level.

In addition, we find the State's concession that this issue, if raised by Plaintiffs below, is not ripe for summary judgment is appropriate. The State's concession was based upon its acknowledgment that discretionary function immunity would not protect the State from any negligent design and construction of the intersection in 1924. "The State has a duty to exercise reasonable care under all the attendant circumstances in planning, designing, constructing and maintaining the State system of highways [and] . . . owes this duty to persons lawfully traveling upon the highways of Tennessee." *Goodermote v. State*, 856 S.W.2d 715, 720 (Tenn. Ct. App.

1993) (citing Tenn. Code Ann. § 9-8-307(a)(1)(I)). This specific issue or claim concerns whether the State breached its duty of care when it designed and constructed the portion of Highway 11 that includes the intersection. The record on appeal contains no proof regarding whether the State met its duty to exercise reasonable care as the record does not show whether the State complied with the plans for the construction of the intersection and whether those plans complied with industry standards as they existed in 1924. *See id.* (holding the State breached its duty to exercise reasonable care in the construction of a bridge on I-24 by its failure to comply with the plans and, therefore, was liable under Tenn. Code Ann. § 9-8-307(a)(1)(I)). Beebe's affidavit, as relevant to this claim, provides only that Beebe, a TDOT traffic engineer, is not aware of any sight distance standards or guidelines that were in effect in 1924. Accordingly, the record shows the State, as the moving party, failed to satisfy its burden either to establish an affirmative defense or negate an essential element of this claim. *See Staples*, 15 S.W.3d at 88. Therefore, we hold the Claims Commission correctly denied the State's Motion for Summary Judgment on the issue of whether the State was liable, under Tenn. Code Ann. § 9-8-307(a)(1)(I), for the negligent design and/or construction of the intersection in 1924.

## Conclusion

We reverse the portion of the Claims Commission's judgment relative to the State's decision not to install a traffic control device and hold that the State is entitled to summary judgment on Plaintiffs' claim based upon the State's decision regarding whether or not to install a traffic control device. The remainder of the Claims Commission's judgment is affirmed. This cause is remanded to the Claims Commission for such further proceedings as may be required, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, the State of Tennessee.

D. MICHAEL SWINEY, JUDGE