# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 19, 2010 Session

## KAY AND KAY CONTRACTING, LLC v.
## TENNESSEE DEPARTMENT OF TRANSPORTATION

**Appeal from the Claims Commission for the State of Tennessee**
**No. 20081364-I      William O. Shults, Commissioner**

---

**No. E2009-01769-COA-R9-CV - FILED JUNE 25, 2010**

---

Kay and Kay Contracting, LLC ("Contractor") entered into a contract with the Tennessee Department of Transportation ("TDOT") to build a bridge in Campbell County, Tennessee. Contractor subsequently entered into a subcontract with Whitley County Stone, LLC ("Subcontractor") to provide the excavation and grading work on the project. Subcontractor does not have a written contract with TDOT. Both Contractor and Subcontractor filed claims with the Claims Commission alleging they were owed money by TDOT. Subcontractor was dismissed as a party because it did not have a written contract with TDOT, as required by Tenn. Code Ann. § 9-8-307(a)(1)(L). The Commissioner, however, determined that Contractor was allowed to prosecute Subcontractor's claim as a "pass-through" claim. The sole issue on this interlocutory appeal is whether Tenn. Code Ann. § 9-8-307(a)(1)(L) removes the State's sovereign immunity such that Contractor can assert a "pass-through" claim against TDOT on Subcontractor's behalf. We conclude that sovereign immunity from such a claim is not removed, and we reverse the judgment of the Claims Commission.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission;**
**Judgment of the Claims Commission Reversed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Steven B. McCloud, Senior Counsel, Nashville, Tennessee, for the Appellant, Tennessee Department of Transportation.

Spencer D. Noe and Timothy C. Wills, Lexington, Kentucky, and Laurie H. Hallenberg, Knoxville, Tennessee, for the Appellee, Kay and Kay Contracting, LLC.

# OPINION

## Background

The relevant facts for purposes of resolving this interlocutory appeal are undisputed. Contractor entered into a written contract with TDOT for the grading, drainage, and construction of a concrete Bulb-Tee beam bridge on Interstate 75 in Campbell County, Tennessee. The initial estimated cost of the project was in excess of $10.2 million. Subsequently, Contractor entered into a separate contract with Subcontractor for the excavation and grade work on the project. The estimated cost of the excavation and grading work was in excess of $3.1 million.

According to Contractor, problems developed during the construction of the bridge, resulting in several adjustments to the contract price. After TDOT allegedly defaulted on payment for various portions of the project, both Contractor and Subcontractor filed a claim with the State of Tennessee, Division of Claims Administration. In September 2008, the claim was transferred to the Tennessee Claims Commission. Approximately one month later, Contractor and Subcontractor filed a complaint with the Claims Commission against TDOT. According to the complaint, Contractor was owed $298,751.41, and Subcontractor was owed $199,746.63.[1]

TDOT filed an answer and denied any liability to either Contractor or Subcontractor. TDOT also filed a motion to dismiss Subcontractor's claims on the basis that the Claims Commission did not have subject matter jurisdiction over Subcontractor's claim because there was no written contract between TDOT and Subcontractor.

Although the Commission agreed that Subcontractor was not a proper party to the lawsuit in the Claims Commission, the Commission nevertheless concluded that Contractor could pursue Subcontractor's claim by asserting what is referred to as a "pass-through" claim. According to the Commission:

> The legal issue is whether or not a general contractor
> involved in a large state highway construction project can assert
> a claim on behalf of one of its subcontractors against the State.

---

[1] Contractor also requested additional relief, including an order granting Contractor "329 days of additional time under the Contract and to terminate TDOT's assessment of liquidated damages" against Contractor.

In contracts involving the federal government, as well as nineteen (19) states which have addressed such a problem, this sort of issue has been denominated as a "pass-through" claim.

\*   \*   \*

According to the State's position, the Commission lacks jurisdiction here over [Subcontractor's] claim since the General Assembly of Tennessee, per the waiver of the State's sovereign immunity against contractor suits, has limited the right to institute such causes of actions to those entities having a written contract with the State. Here, so the argument goes, [Subcontractor] does not have a written contract with the State and therefore its claim for work it claims it performed, but for which it has not been paid in full, cannot proceed before the Commission. Additionally, the State argues that the general contractor cannot assert such a claim - a so called "pass-through claim" - on behalf of [Subcontractor]. Rather, the State contended . . . [that Subcontractor should sue Contractor and] if a final judgment is rendered . . . against [Contractor], it could, in turn, file a claim with the Commission.

In its Response to the Motion to Dismiss, [Contractor] concedes that under the Tennessee Claims Commission Act, [Subcontractor] is not a proper party to this action. Nevertheless, [Contractor] says it should be able to pursue, on behalf of its subcontractor, a claim for work done which was an important part of its overall contract on the . . . project. Such a procedure would constitute utilization of the "pass-through" theory recognized in federal government contracts and apparently by at least eighteen of the states. In support of its position, [Contractor] cites the United States Supreme Court decision in *United States v. Blair*, 321 U.S. 730 (1944) and quotes language from that opinion describing the general contractor there as ". . . the only person legally bound to perform [the] contract with the Government." *Id*. at 737-738. . . .

Both parties informed the Commission that they have been unable to find any precedent directly on point in Tennessee

either permitting or disallowing a so-called "pass-through" claim by a general contractor for one of its subcontractors.

The Commission then discussed federal law and law from other states, the vast majority of which permit "pass-through" claims. After reviewing the law from other jurisdictions, the Commission concluded that there clearly was a written contract between TDOT and Contractor, and allowing Contractor to pursue a claim on behalf of Subcontractor would not offend "the concept of sovereign immunity in Tennessee since the Tennessee Claims Commission Act . . . [was amended] to direct a liberal application of its provisions in order that its remedial purposes might be accomplished." The Commission then concluded:

> Therefore, the Commission FINDS that although [Subcontractor] is not a proper party to this litigation and therefore, will be **DISMISSED**, the issue of [Contractor's] liability for nearly Two Hundred Thousand Dollars ($200,000.00) in payments allegedly owed to [Subcontractor] is ripe for resolution now and may be prosecuted by [Contractor].

> The State's Motion to Dismiss [Contractor's] claim on behalf of [Subcontractor] must be respectfully **DENIED**. . . .

After entry of the above Order, TDOT filed a motion requesting permission to file an interlocutory appeal to this Court on the issue of whether Tenn. Code Ann. § 9-8-307(a)(1)(L) removes the State's sovereign immunity for pass-through claims. The Commission granted TDOT's request for a Tenn. R. App. P. Rule 9 interlocutory appeal, as did this Court. As stated, the sole issue on appeal is whether Tenn. Code Ann. § 9-8-307(a)(1)(L) removes the State's sovereign immunity such that Contractor can assert a "pass-through" claim against the State on Subcontractor's behalf.

## Discussion

Since the relevant facts are undisputed, this appeal presents a question of law. We review legal issues "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

In *Stewart v. State*, 33 S.W.3d 785 (Tenn. 2000), our Supreme Court gave a very thorough analysis of the subject matter jurisdiction of the Claims Commission. According to the Supreme Court:

It is a well-settled principle of constitutional and statutory law in this state that "[t]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued." *Brewington v. Brewington*, 215 Tenn. 475, 480, 387 S.W.2d 777, 779 (1965). This doctrine of sovereign immunity "has been a part of the common law of Tennessee for more than a century and [it] provides that suit may not be brought against a governmental entity unless that governmental entity has consented to be sued." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). Despite this general grant of immunity, however, the courts of this state have frequently recognized that the Tennessee Constitution has modified this rule of absolute sovereign immunity by providing that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17; *see also Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn. 1994).

Pursuant to its constitutional power to provide for suits against the state, the legislature created the Tennessee Claims Commission in 1984 to hear and adjudicate certain monetary claims against the State of Tennessee. *See* Tenn. Code Ann. §§ 9-8-301 to 307 (1999). While the Claims Commission has exclusive jurisdiction to hear claims arising against the state, *cf.* Tenn. Code Ann. § 20-13-102(a) (1994), this jurisdiction is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a). If a claim falls outside of the categories specified in section 9-8-307(a), then the state retains its immunity from suit, and a claimant may not seek relief from the state. *Cf. Hill v. Beeler*, 199 Tenn. 325, 329, 286 S.W.2d 868, 869 (1956) (stating that "except as the Legislature of the State consents there is no jurisdiction in this Board of Claims to entertain suits against the State").

The courts of this state have traditionally held that any statute granting jurisdiction to hear a claim against the state must be strictly construed, as any such statute is in derogation of the common law rule of sovereign immunity. *See, e.g., Norman v. Tennessee State Bd. of Claims*, 533 S.W.2d 719, 722 (Tenn. 1975) ("We further recognize that the statutory provisions

governing the Board of Claims have been strictly construed, in view of the fact that they do represent an encroachment upon the sovereign immunity and upon the assets of the State."); *State ex rel. Allen v. Cook*, 171 Tenn. 605, 609, 106 S.W.2d 858, 860 (1937) ("Statutes passed by the Legislature, under the authority of article 1, section 17, of the Constitution, permitting suits against the state, being in derogation of the sovereign's exemption from suits, must be strictly construed."). Nevertheless, in 1985, the General Assembly amended section 9-8-307(a) to express its intention as to the jurisdictional reach of the Claims Commission: "It is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Tenn. Code Ann. § 9-8-307(a)(3).

Hence, although we have traditionally given a strict construction to the scope of the Commission's jurisdiction, we also recognize that our primary goal in interpreting statutes is "to ascertain and give effect to the intention and purpose of the legislature." *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000) (citing *Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993)). If the legislature intends that its statutes waiving sovereign immunity are to "be liberally construed," then the courts should generally defer to this expressed intention in cases where the statutory language legitimately admits of various interpretations. A policy of liberal construction of statutes, however, only requires this Court to give "the most favorable view in support of the petitioner's claim," *Brady v. Reed*, 186 Tenn. 556, 563, 212 S.W.2d 378, 381 (1948), and such a policy "does not authorize the amendment, alteration or extension of its provisions beyond [the statute's] obvious meaning." *Pollard v. Knox County*, 886 S.W.2d 759, 760 (Tenn. 1994). Moreover, "[w]here a right of action is dependent upon the provisions of a statute . . . we are not privileged to create such a right under the guise of a liberal interpretation of it." *Hamby v. McDaniel*, 559 S.W.2d 774, 777 (Tenn. 1977).

Accordingly, when deciding whether a claim is within the proper statutory scope of the Commission's jurisdiction to hear

and decide claims against the State of Tennessee, we will give a liberal construction in favor of jurisdiction, but only so long as (1) the particular grant of jurisdiction is ambiguous and admits of several constructions, and (2) the "most favorable view in support of the petitioner's claim" is not clearly contrary to the statutory language used by the General Assembly. *Cf. Northland Ins. Co. v. State*, 33 S.W.3d 727, 730 (Tenn. 2000) ("The statute's liberal construction mandate allows courts to more broadly and expansively interpret the concepts and provisions within its text."). Furthermore, because issues of statutory construction are questions of law, *see Wakefield v. Crawley*, 6 S.W.3d 442, 445 (Tenn. 1999); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn. 1999), we review the issues involving the jurisdiction of the Claims Commission *de novo* without any presumption that the legal determinations of the commissioner were correct. *See Northland Ins. Co.*, 33 S.W.3d at 729; *Ardis Mobile Home Park v. State*, 910 S.W.2d 863, 865 (Tenn. Ct. App. 1995).

*Stewart*, 33 S.W.3d at 790-91 (footnote omitted)

In reaching a conclusion that pass-through claims were permissible in Tennessee and consistent with Tenn. Code Ann. § 9-8-307(a)(1)(L), the Commission relied heavily upon the case of *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605 (Tex. 2004), wherein the Texas Supreme Court answered the following certified question in the affirmative: "Does Texas recognize pass-through claims, *i.e.*, may a contractor assert a claim against an owner on a subcontractor's behalf when there is no privity of contract between the subcontractor and the owner?" *Id*. at 607. In concluding that Texas did recognize pass-through claims, the Texas Supreme Court discussed the various policy factors both in support of and against allowing such claims. The Texas Supreme Court ultimately concluded that Texas would allow pass-through claims based on the policy reasons which favored allowing such claims. *Id*. at 619. Ironically, the Texas Supreme Court refused to answer the specific question that is now posed to this Court for review:

The City argues that, before a pass-through claim against a governmental entity can be recognized, there must be a waiver of sovereign immunity. ICC responds that, to the extent the City asserts that ICC's breach of contract claims are barred by sovereign immunity, such arguments are outside the scope of the question certified by the Fifth Circuit. ICC also argues that the

City did not mention sovereign immunity in its brief filed with the Fifth Circuit, nor did the City plead sovereign immunity in its answer filed in district court.

Although the questions certified do not limit our answers, we decline to extend our answers in this case to the issue of sovereign immunity, which is well beyond the scope of the questions certified. Doing so would require us to venture into the facts of this particular case and analyze the merits of the parties' claims at issue before the Fifth Circuit Court of Appeals, rather than provide answers solely as to the status of Texas law on the questions asked. For this reason, we confine our answers to the questions certified. How our answer is to be applied to the facts of this case is the province of the certifying court. *See Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 798 (Tex. 1992).

*City of Dallas*, 135 S.W.3d at 620.

The Tennessee statute removing the State's immunity for claims against the State based upon breach of contract provides, in relevant part, as follows:

(a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories:

\* \* \*

(L) Actions for breach of a *written* contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract . . . .

Tenn. Code Ann. § 9-8-307(a)(1)(L) (Supp. 2009) (emphasis added).

All parties to this appeal agree that Subcontractor does not have a written contract with TDOT and, therefore, it is not a proper party to this lawsuit. Thus, the

Commission's dismissal of Subcontractor as a party was correct. The more difficult issue is whether Contractor can assert a pass-through claim on Subcontractor's behalf.

Tenn. Code Ann. § 9-8-307(a)(1)(L) is quite clear in requiring a written contract with the State before immunity from suit is removed. The statute is neither ambiguous nor reasonably open to several constructions. By allowing Contractor to assert a pass-through claim on Subcontractor's behalf, Contractor is asserting a breach of contract claim on behalf of a party that everyone agrees does not have a written contract with TDOT. This is contrary to the plain language of the statute.

We agree with the Commissioner that there are several sound policy reasons which mitigate in favor of allowing pass-through claims. It is, however, the General Assembly's prerogative to determine the State's public policy as to allowing suits against the State, not this Court's, and the General Assembly has done so. If the General Assembly concludes that the public policy of this State is such that pass-through claims against the State should be allowed, then the General Assembly can amend Tenn. Code Ann. § 9-8-307(a)(1)(L) to permit such claims.

We acknowledge that we must give Tenn. Code Ann. § 9-8-307(a)(1)(L) a liberal construction. However, in so doing we cannot amend, alter, or extend the statute beyond its obvious meaning. *Stewart*, 33 S.W.3d at 791. The obvious and ordinary meaning of requiring a "written contract between claimant and the state..." is not susceptible of more than one meaning. A contract is either written or it is not. If we allow pass-through claims, then we are allowing a party to sue the State and prosecute the claim of a different entity that has no contractual relationship with the State. This is contrary to the clear and unambiguous language of the statute requiring a written contract between the claimant and the State before the State can be sued for breach of contract. We again note that if the General Assembly believes that allowing pass-through claims is in the State's best interest and public policy favors allowing such claims, we invite the General Assembly to amend the relevant statutory provisions to expressly allow such claims.

It is important to emphasize the scope of our holding. Our opinion applies only to pass-through claims wherein subject matter jurisdiction is predicated on the removal of the State's immunity pursuant to Tenn. Code Ann. § 9-8-307(a)(1)(L). We express no opinion on whether pass-through claims otherwise are permitted in Tennessee in other contexts.

We also note that our holding does not allow TDOT to escape liability if Subcontractor has a valid claim. The scope of TDOT's contractual liability on this project is controlled by its written contract with Contractor. The contract between Contractor and

Subcontractor cannot expand TDOT's liability under the original contract. As noted by the Commission in this case:

> The actual work to be performed by [Contractor] is literally contained within the terms of the Prime Contract between the State and [Contractor]. Paragraph 1(b) of the Contract . . . incorporates by reference the Proposal Contract which, in turn, in Item D of the Contract Schedule, at page 10, includes precisely the work . . . which [Subcontractor] contends it completed but was not paid in full for doing.

If TDOT's liability for work performed by Subcontractor is dependent on the terms of TDOT's contract with Contractor, then Contractor can sue TDOT directly for any alleged breach of that contract.

## Conclusion

The judgment of the Claims Commission is reversed and this cause is remanded to the Claims Commission for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellee, Kay and Kay Contracting, LLC.

_____
D. MICHAEL SWINEY, JUDGE